**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NOT FOR PUBLICATION**

| | |
|---|---|
| NEW JERSEY REGIONAL COUNCIL OF CARPENTERS and NEW JERSEY CARPENTERS FUNDS and the TRUSTEES THEREOF,<br><br>           Petitioners,<br><br>   v.<br><br>DARKEN ARCHITECTURAL WOODWORKING,<br><br>         Respondent. | Civ. Action No. 10-1865 (KSH)<br><br><br><br>    **OPINION AND ORDER** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes to the Court on the motion of the petitioners, the New Jersey Regional Council of Carpenters and the New Jersey Carpenters Funds ("Funds") and the Trustees of the Funds ("Trustees"), to confirm an arbitration award in the amount of $275,599.69, including interest, liquidated damages, and attorneys' fees [D.E. 3].  Arbitrator J.J. Pierson granted the award against the defendant, Darken Architectural Woodworking ("Darken"), for failure to make contributions to the Funds.  (D.E. 1, Ex. C.)  Darken opposes the trustees' motion to confirm the award [D.E. 6].

The Trustees assert that Darken signed an agreement with the United Brotherhood of Carpenters and Joiners of America ("International Agreement") in which it acknowledged its obligation to contribute to the Funds and consented to arbitration under the pertinent local collective bargaining agreement, here the agreement between the New Jersey Regional Council of Carpenters and the Building Contractors Association of New Jersey (the "BCA Agreement").

1

Darken, however, denies that it is required to arbitrate on the grounds that the Funds and Trustees are not entitled to seek arbitration under the agreements, and that Darken may refuse to arbitrate [D.E. 6].  The Trustees respond that Darken's contentions were for the arbitrator, and not this Court, to consider, and that because Darken failed to appear at the arbitration, it has abandoned its arguments.  [D.E. 10]  The Trustees further assert that the arbitrator's award was proper.

A court's review of an arbitration award is "exceedingly narrow."  *Eichleay Corp. v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 944 F.2d 1047, 1055–56 (3d Cir. 1991).  "An arbitration award can be vacated only if it does not draw its essence from the collective bargaining agreement."  *Id.* at 1056.  A court must affirm the award if it has some support in the record and "the arbitrator has not manifestly disregarded the law."  *Id.*

However, where "representational issues" are concerned, an arbitrator's award merits no deference.  *Id.*; *see also Nat'l Labor Relations Bd. v. Paper Manufacturers Co.*, 786 F.2d 163, 167 (3d Cir.1986) ("Representation issues may not be decided by contract, and thus may not be decided by an arbitrator.").  A representational issue exists when a party contends that it is not a signatory to a collective bargaining agreement.  *New Jersey Regional Council of Carpenters v. Heartland Development Co., Inc.*, 2010 WL 1706961, at *3 (April 27, 2010).  "If a party is not a signatory to a collective bargaining agreement, then an arbitrator lacks the authority to issue an award against that party."  *Id.*; s*ee also Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc.*, 814 F.Supp. 392, 403 (D.Del.1993).  Similarly, a non-signatory generally cannot enforce an arbitration provision.  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296–97 (3d Cir. 1996).  In this case, Darken argues that the plaintiff funds are not signatories to either the International Agreement or the BCA Agreement and

therefore cannot enforce the arbitration provision.  (Opp'n Br. 2–3.)  This question is one for a court, rather than an arbitrator, to decide.

Darken concedes that it is bound by the International Agreement and that the agreement binds it to submit to the BCA Agreement's arbitration provisions.  (*Id.* at 2.)  However, it argues that the plaintiff Trustees are not signatories to either the International Agreement or the BCA Agreement, and therefore, Darken has no obligation to arbitrate vis-à-vis the funds.  This argument does not withstand scrutiny.  The International Agreement, executed in 2003 and renewed every three years since, obligates Darken to submit to the arbitration and grievance procedures laid out in the BCA Agreement: "Any dispute relating to this Agreement may be prosecuted in accordance with the grievance/arbitration procedure of the member's home area local union Master Labor Agreement, or the work area local union Master Labor Agreement, and the Company agrees to be bound by those procedures."  (Reply Br., Ex. D, at 3.)  Darken does not dispute that the BCA Agreement is the pertinent "Master Labor Agreement."  The BCA Agreement, in turn, incorporates the Trust Agreements by reference and authorizes the Trustees to bring an appropriate action to collect contributions due.  (D.E. 1, Ex. A, at 21–22, 24–25.)  Even if the agreements did not authorize the Trustees to collect funds, they would be entitled to do so as third-party beneficiaries of the agreements.  *Sinai Hosp. of Baltimore, Inc. v. Nat'l Benefit Fund for Hosp. & Health Care Employees*, 697 F.2d 562, 568 (4th Cir. 1982); *see also Lewis v. Lowry*, 295 F.2d 197 (4th Cir.1961); *cf. United States ex rel. Sherman v. Carter*, 353 U.S. 210, U.S. (1957).

Darken also argues that Article XXVI of the BCA Agreement states only that the Trustees "may request" arbitration and that Darken therefore is not obligated to arbitrate, but instead may decline.  (Opp'n Br. 3.)  This argument is also unavailing.  Article XXVI states that

3

a union can strike employers who are delinquent in their contributions to the Funds and that the Trustees "shall maintain appropriate actions in law or in equity." (D.E. 1, Ex. A., at 21.)  It adds that the Trustees "may request arbitration of any alleged wage or fringe benefit fund delinquencies and arbitration must be heard within thirty (30) days after such request." (*Id.* at 24–25.)  In contrast to Darken's cribbed interpretation of the phrase, the complete language of Article XXVI establishes that the Article presents a choice: the union can strike, and the Trustees can either sue or take the delinquent employer to arbitration.  The Trustees, therefore, were entitled to seek arbitration to collect the contributions due.

Having determined that the dispute was properly before the arbitrator, the Court further concludes that the award should be confirmed.  As noted above, a court's review of an arbitration reward is extremely limited.  *Eichleay*, 944 F.2d at 1055–56; *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960).  A court may only overturn an award "if it does not draw its essence from the collective bargaining agreement." *Eichleay*, 944 F.2d at 1056.  "So long as the arbitration award has some support in the record, and the arbitrator has not manifestly disregarded the law, we will affirm the award."  Here, the arbitrator reviewed the BCA Agreement and determined that Darken had an obligation to make fringe benefit contributions and that the Funds had the right to recover Darken's delinquent contributions.  (D.E. 1, Ex. C, at 1–3.)  The arbitrator's decision that Darken owed contributions to the Funds derives directly from the collective bargaining agreement, and there is no suggestion that the arbitrator disregarded the law.  Therefore, the arbitration award must be confirmed.

Good cause appearing,

It is on this 19th day of November 2010,

4

**ORDERED** that the Opinion and Award of January 8, 2010 [D.E. 1, Ex. C] are

**confirmed**.


<u>/s/Katharine S. Hayden</u>

Katharine S. Hayden, U.S.D.J.